Filed 7/19/23  Boustead Securities v. Sunstock CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BOUSTEAD SECURITIES, LLC, | |
| Plaintiff and Respondent, | G060952 |
| v. | (Super. Ct. No. 30-2020-01155740) |
| SUNSTOCK, INC., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, David A. Hoffer, Judge.  Affirmed.

Ronald H. Freshman, for Defendant and Appellant.

Berg Law Group, and Eric Berg, for Plaintiff and Respondent.

\*          \*          \*

Sunstock, Inc. (Sunstock), appeals from a judgment following a bench trial. The trial court found in favor of Boustead Securities, LLC (Boustead or BSL) on BSL's breach of contract claim, except as to damages based on an unconscionable interpretation of the term "Financing" that would compensate BSL for financial transactions in which BSL was not involved ("uninvolved transactions"). The court rejected Sunstock's cross-claim for breach of fiduciary duty for BSL's claim for compensation on uninvolved transactions, finding, among other grounds, that BSL did not make its claim until preparation for this litigation and thus its conduct was protected under the litigation privilege.

On appeal, Sunstock contends the court abused its discretion in denying its motion for a six-month continuance, made six weeks before the trial date. As discussed below, we conclude Sunstock has not shown good cause for a six-month continuance. Sunstock also argues BSL breached its fiduciary duty because BSL failed to disclose that it would not help Sunstock get listed on the NASDAQ exchange and that it would seek compensation from all investments, even if not from a new investor. As discussed below, we conclude Sunstock has not established that BSL was liable for any breach. Finally, Sunstock contends the entire agreement was unenforceable because of BSL's unconscionable interpretation of the "Financing" provision. We disagree because the contractual language and statutory law permitted the trial court to sever or modify the unconscionable term to render the remaining contractual provisions enforceable, which is what occurred here. Accordingly, we affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Complaint and Answer*

On August 18, 2020, BSL filed a complaint against Sunstock for breach of contract. The complaint alleged that in 2019, Sunstock approached BSL "about acting as [Sunstock]'s placement agent, on an exclusive basis, with respect to [Sunstock]'s planned

2

securities offerings." Thereafter the parties entered into a "Placement Agent and Advisory Services Agreement" (Agreement), under which BSL would be entitled to a "Success Fee" based on Sunstock's "Equity Financing," as defined in the Agreement. The complaint alleged that Equity Financing was achieved, and as part of the Success Fee, Sunstock issued to BSL "Preferred and Common Stock Warrants" ("the Warrants"). In June 2020, BSL sent to Sunstock its notice of its intent to exercise the Warrants to receive free-trading shares in Sunstock. BSL also requested an Opinion Letter from Sunstock's counsel pursuant to Rule 144 of the Securities Act of 1933 so BSL could exercise the Warrants. After not receiving any response from Sunstock, BSL followed up on its request on July 1, 2020 and July 11, 2020. The complaint alleged that Sunstock's failure to act on BSL's request constituted a breach of the Agreement.

The complaint attached the Agreement, which was signed by Keith Moore, the CEO of BSL, and Jason Chang, the CEO of Sunstock. The Agreement described the "Success Fees" as follows: If Sunstock consummates a "Financing," which is "defined as a corporate investment or financial investment of/with/into the Company, or if stock/equity is purchased directly from a shareholder(s) of the Company, in the course of one or more rounds of investments, . . . BSL shall receive a Success Fees of ten percent (10%) of the gross proceeds received in the Financing . . . and warrants to purchase ten percent (10%) of the number of shares issued for the gross proceeds received in the Financing . . . ." The warrants shall be issued to BSL, and due and payable upon the closing of each Financing. "The warrants shall be exercisable from the date of issuance and for a term of five (5) years." BSL also would be entitled to a fee equal to 10 percent of the transaction value of "any transaction or series or combination of transactions, whereby, directly or indirectly, control of or a material interest in the Company or any of its business. . . ."

3

The Agreement also provided that with respect to BSL's obligations and duties, "BSL's obligations hereunder are on a reasonable best efforts basis only and . . . the execution of this Agreement does not constitute a commitment by BSL to purchase any securities and does not ensure the successful placement of any securities or any portion thereof or the success of BSL with respect to securing any other Financing on behalf of the Company. BSL will act solely a broker with respect to identifying and negotiating with potential investors in a Financing ("Investors")." Furthermore, "BSL is and will hereafter act as an independent contractor and not as an employee of the Company and nothing in this Agreement shall be interpreted or construed to create any employment, partnership, joint venture, or other relationship between BSL and the Company." The Agreement contains a merger clause, providing that "[a]ll prior and contemporaneous conversations, negotiations, possible and alleged agreements, representations, covenants and warranties concerning the subject matter hereof are merged herein and shall be of no further force or effect." It also contained a severability clause, which provides that "[i]f any provision herein is or should become inconsistent with any present or future law, rule or regulation . . ., such provision shall be deemed to be rescinded or modified in accordance with such law, rule or regulation. In all other respects, this Agreement shall continue to remain in full force and effect."

On October 13, 2020, Sunstock filed an answer, generally denying the allegations and raising numerous affirmative defenses.

On March 5, 2021, pursuant to a joint stipulation, Boustead filed a First Amended Complaint (FAC). The FAC added an allegation that "[i]n addition to the Success Fee outlined above, [Sunstock] owes [BSL] an additional Success Fee in the form of an additional 119,451,103 shares of Common Stock Warrant Shares and $102,598.00 in Cash Commissions. [BSL] has made a demand for these additional Success Fees to [Sunstock] without success." (Italics ommited.)

4

B. *Motion to Continue Trial and Related Matters*

On July 21, 2021, approximately six weeks before the trial was scheduled to begin, Sunstock filed a motion requesting leave to file an amended answer and a cross-complaint and to continue the trial date. In the motion, Sunstock explained that on June 29, 2021, BSL conducted the deposition of Jason Chang, Sunstock's CEO. "During this deposition it was disclosed that Boustead, as financial advisor to Sunstock[,] had made demands of Sunstock that it not have any attorney review the contracts, and that Boustead was expecting and suing for commissions on transactions in which Boustead had no knowledge or involvement with, and for a purchase agreement in which Boustead deceived Sunstock into believing the shares were for the new investors, when in fact they were for Boustead." Specifically, BSL had submitted an exhibit to Chang showing "several transactions in which Sunstock arranged and engaged in equity financing when the owner lent his personal funds to the business, or professional contractors were compensated for services with shares of the company - these transactions were and are regularly performed by the company and in which Sunstock needed no assistance from Boustead." Sunstock asserted that it sought BSL's assistance to find "*potential investors*," and not for transactions that Sunstock already regularly did without BSL's assistance. Sunstock also alleged that BSL pressured it into not having an attorney review the contract "because it was Boustead's intent to claim commissions on transactions that it had nothing to do with," which Sunstock would have rejected "had an attorney explained that clause in the contract." Finally, Sunstock alleged that in December 2019, BSL sent a stock purchase agreement, which it represented was a necessary part of the financing arrangement for new investors, when in reality, it was a stock purchase agreement for BSL.

Sunstock sought leave to amend the answer to add the affirmative defense of Unclean Hands and Unconscionability based on BSL's misrepresentations about its services and its demand that Sunstock not have an attorney review the contract prior to

5

signing. Sunstock sought to file a cross-complaint seeking: (1) damages for BSL's breaching its fiduciary duty to do no harm to Sunstock; (2) to void the contractual clauses that allow BSL to demand payments for investors that BSL did not find or engage; and (3) damages for BSL's breach of contract and unjust enrichment related to its failure to find new investors to invest $550,000 when it only found a single investor for $350,000.

In the motion, Sunstock also sought a continuance of the trial date, with all corresponding deadlines. It noted that trial was currently scheduled for August 30, 2021, with a discovery cut-off date of July 31, 2021. It argued a continuance was reasonable because all parties would benefit from additional time for discovery.

On July 27, 2021, Sunstock filed an ex parte application to shorten the time to be heard on its motion for leave to file a cross-complaint and amend the answer. In the application, Sunstock stated it was unaware that BSL was claiming compensation for transactions in which BSL was not involved until BSL presented a spreadsheet as an exhibit at Chang's deposition, taken on June 29, 2021, which showed the amounts BSL believes it was owed on various transactions. At that time, Chang also disclosed to Sunstock's counsel that BSL had demanded that Sunstock not have an attorney review the contract or it would cancel the contract and pending investment from a new investor. As a result of that spreadsheet and Sunstock's subsequent investigation, Sunstock sought to amend its answer to add two new affirmative defenses - Unclean Hands and Unconscionability - and to assert compulsory cross claims. The application also sought to continue trial and related discovery dates for six months to "allow the parties time to conduct further discovery specific to the new affirmative defenses and cross claims." Sunstock noted that BSL was notified of the ex parte application, and BSL did not oppose the application to shorten time, but opposed any motion to continue the trial.

Subsequently, the trial court, on its own motion, continued the hearing on the ex parte application to August 24, 2021. On August 24, 2021, following arguments, the trial court denied the application. It ruled that the cross-complaint could be filed on

6

that date (August 24), and that any response would be due by August 27, 2021. On August 26, 2021, BSL filed its answer to the cross-complaint, generally denying the allegations and raising 19 affirmative defenses.

On August 28, 2021, Sunstock file a petition for a writ of mandate, requesting this court issue a writ commanding the trial court to vacate its order denying the continuance, and to continue the trial for six to twelve months. This court summarily denied the petition.

C. *Trial Briefs and Statement of Decision*

Before trial, the parties filed trial briefs identifying certain trial issues related to their respective claims. In BSL's trial brief, it argued that it was entitled to compensation under the Agreement for successfully achieving $550,000 in Equity Financing. In response to Sunstock's expected argument that BSL was entitled to a Success Fee only on the $350,000 Equity Financing raised from a new investor and not the $200,000 contributed by Chang, BSL argued that the Agreement contains "no carve-out for where that financial investment comes from." It also asserted that in two filings with the Securities Exchange Commission (SEC), Sunstock admitted that it owed BSL a Success Fee on the entire $550,000 Equity Financing.

In its trial brief, Sunstock argued that BSL owed a fiduciary duty to Sunstock as its investment adviser, and breached that duty by refusing to allow outside counsel to review the Agreement and misrepresenting that the Agreement would not apply to uninvolved transactions, via its employee Eli Ansari.

Trial on the complaint and cross-complaint commenced on September 1, 2021. BSL's CEO Keith Moore and its employee Ansari testified. Sunstock's CEO Chang and two defense experts, Mike Lee and Steven Gillings, also testified.

Thereafter, the trial court issued findings and rulings in a written Statement of Decision. On BSL's breach of contract claim, the court found that eliminating Sunstock's $550,000 in "toxic debt" was a purpose of the Agreement, although it noted

7

Chang's testimony that another purpose of the Agreement was to get Sunstock listed on the NASDAQ exchange (or "uplisted"). It noted that BSL claimed it was owed a Success Fee on three categories of "Financing": (1) the $350,000 raised from a single new investor; (2) $200,000 that Chang contributed on terms similar to the terms offered to the new investor; and (3) various Sunstock transactions found in Sunstock's publicly-available SEC filings (the uninvolved transactions). As to the uninvolved transactions, the court found, based on BSL's CEO Moore's testimony, that BSL never billed or charged Sunstock for the uninvolved transactions, but claimed compensation only after litigation commenced when "in preparation for litigation, [BSL] went back to Sunstock's SEC filings to find every other transaction on which it could seek fees."

In response to BSL's breach of contract claim, Sunstock contended the entire Agreement was void and unenforceable because compensating BSL for uninvolved transactions is unconscionable. The court agreed with Sunstock's contention that compensating BSL for uninvolved transactions was "substantively outrageous" and that BSL employee Ansari should have disclosed that the term "Financing" could include uninvolved transactions. Having found BSL's interpretation of "Financing" unconscionable, the court then addressed the remedy. It rejected Sunstock's argument that the entire Agreement should be voided, finding that remedy "Both unfair and unnecessary. The remedy is unfair because it would deprive Boustead of the fees it earned through its efforts and expertise. It is unnecessary because . . . Civil Code § 1670.5(a) permits the court to 'so limit the application of any unconscionable clause as to avoid any unconscionable result.' Under this authority, the court limits the definition of "Financing[ ]" for which Boustead is entitled to fees to financings connected in some way to Boustead's efforts after the Agreement was executed."

The court then addressed the three categories of financings on which BSL was claiming damages. As to the $350,000 financing, the court found that Sunstock conceded that if the Agreement was enforceable, it was liable for the Success Fee on this

amount. As to the $200,000 financing contributed by Sunstock's CEO Chang, the court credited Ansari's testimony that "had Chang not invested, Boustead would have found another investor to bridge the gap between the $350,000 Boustead obtained and the $550,000 toxic debt." Additionally, Sunstock admitted liability on the entire $550,000 amount in a SEC filing. Thus, BSL was entitled to a Success Fee on the $200,000 amount. Finally, as to the uninvolved transactions, the court ruled that BSL was not entitled to any Success Fee, based on its prior ruling rejecting BSL's interpretation of the term "Financing."

As to Sunstock's cross claims, the court rejected the claims for void contract and unjust enrichment because its prior rulings excluding compensation for uninvolved transactions resolved those causes of action. It rejected the breach of contract claim based on BSL's failure to raise $550,000 from new investors only, because "the Agreement contained no such requirement."

Finally, on the breach of fiduciary duty claim, the court declined to find whether BSL owed Sunstock a fiduciary duty. However, even if BSL had such a duty, the court concluded that Sunstock failed to show BSL was liable for any breach of a fiduciary duty. The court noted that Sunstock alleged BSL breached its fiduciary duty in three ways. First, BSL demanded Sunstock not have a legal professional review the contract. The court rejected this factual allegation, discrediting Chang's testimony that "Ansari told him not to have the Agreement reviewed by counsel," and crediting Ansari's trial testimony that no such conversation took place.

Second, Sunstock claimed that seeking fees on the $200,000 investment by Chang constituted a breach. The court rejected this contention, ruling that BSL did not breach its duty by requesting fees to which it was entitled.

Finally, Sunstock argued that BSL breached its duty when it sought fees for the uninvolved transactions. The court found that BSL did not claim these fees "until the

parties ceased working together under the Agreement. The claim for fees for other transactions is Boustead's litigation position and is, thus, privileged. Civil Code § 47."

On November 24, 2021, judgment was entered in favor of BSL on its breach of contract claim and against Sunstock in the amount of $260,308.00 in damages. On Sunstock's cross claims, the court found for BSL and ordered that Sunstock take nothing. Sunstock timely appealed from the judgment.

## II

## DISCUSSION

Sunstock contends the judgment should be reversed for three reasons. First, Sunstock claims the trial court abused its discretion in denying Sunstock's request for a continuance of trial. Second, Sunstock contends the court erred in finding BSL was not liable for any breach of a fiduciary duty. Finally, Sunstock contends the entire Agreement should be voided because of BSL's unconscionable interpretation of the term "Financing." We address each contention in turn.

A. *Motion to Continue Trial and Related Dates*

"The decision to grant or deny a continuance is committed to the sound discretion of the trial court. [Citation.] The trial court's exercise of that discretion will be upheld if it is based on a reasoned judgment and complies with legal principles and policies appropriate to the case before the court. [Citation.] A reviewing court may not disturb the exercise of discretion by a trial court in the absence of a clear abuse thereof appearing in the record." (*Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 984–985.)

Rule 3.1332 of the California Rules of Court (rule 3.1332) provides that "the dates assigned for a trial are firm" and "continuances of trials are disfavored." Nevertheless, a trial court may grant a continuance on, and only on, an affirmative showing of good cause. Relevant examples of good cause include: "A party's excused inability to obtain essential testimony, documents, or other material evidence despite diligent efforts"; and "A significant, unanticipated changed in the status of the case as a

10

result of which the case is not ready for trial." (Cal. Rules of Court, rule 3.1332, subd. (c)(6)-(7).) In ruling on a continuance motion, the court must consider all the facts and circumstances that are relevant to the determination, including: " The proximity of the trial date; . . . The length of the continuance requested; . . . Whether all parties have stipulated to a continuance; . . . Any other fact or circumstance relevant to the fair determination of the motion or application." (Cal. Rules of Court, rule 3.1332, subd. (d).)

Sunstock contends the trial court abused its discretion in denying its request for a continuance because "[t]here was good cause for continuing the trial for six months, to allow the parties to engage in discovery as to the cross claims and affirmative defenses," which denied Sunstock "the opportunity or right to defend against the 19 new affirmative defenses as well as fully develop [its] cross claims." We conclude Sunstock has not shown good cause because it has not shown that it lacked any "essential" evidence to present its cross claims or rebut BSL's affirmative defenses. Nor did the cross claims and affirmative defenses preclude trial. The cross claims arose from BSL's claim for compensation for uninvolved transactions. The term "Financing" was at issue when BSL filed its complaint. Chang and Ansari both testified at trial on the negotiations leading to the Agreement, including the purpose of the Agreement and whether BSL disclosed the term "Financing" would include uninvolved transactions. Based on the trial evidence, the court was able to provide reasoned rulings on the cross claims. Additionally, the continuance motion was brought weeks before trial, and it sought a lengthy six-month continuance. More important, BSL, the party who had to defend against the newly added cross claims, did not agree to a continuance. On this record, Sunstock has not shown that the trial court abused its discretion in denying its request for a six-month continuance.

11

B. *Breach of Fiduciary Duty Claim*

Sunstock next argues that BSL owed a fiduciary duty to Sunstock because BSL entered into a contractual relationship to provide advisory services to Sunstock. Sunstock further argues that BSL breached that duty by: (1) preparing and executing the "predatory contract" which compensated BSL for placements and not for helping Sunstock get uplisted; and (2) failing to fully disclose that it expected fees on Chang's $200,000 investment.

We need not determine whether BSL owed a fiduciary duty to Sunstock because we conclude that Sunstock has not shown that the undisputed evidence demonstrated that BSL breached such duty. As the trial court found, a purpose of the Agreement included retiring a $550,000 toxic debt. That purpose is reflected in the express language of the Agreement, which obligates BSL to use its "best efforts" in "identifying and negotiating with potential new investors in a Financing ("investors")." Thus, regardless whether there was another purpose to the Agreement, BSL was entitled to fees for its efforts relating to raising $550,000.

As to BSL's failure to disclose it would seek compensation for Chang's $200,000 investment, Sunstock does not explain how the failure damaged Sunstock. If BSL should have disclosed before Chang contributed the financing and Chang would not have made the investment based on the disclosure, BSL would have located another new investor to invest the $200,000. Sunstock would remain liable for the $200,000 investment. In sum, Sunstock has not shown BSL was liable for any breach of a fiduciary duty.

C. *Unconscionability*

Sunstock further contends the trial court erred in not finding the entire contract unenforceable because of the unconscionable interpretation of the term "Financing" to include uninvolved transactions and Chang's $200,000 investment. We reject the argument that compensating BSL for Chang's $200,000 investment is

unconscionable because as discussed above, BSL would have secured that investment from a new investor, absent Chang.  As for uninvolved transactions, the trial court properly limited the damages to exclude the unconscionable effect of BSL's interpretation of the term "Financing."  The severability clause in the Agreement and Civil Code section 1670.5(a) authorizes the court's discretionary action to enforce the Agreement in a limited manner.  (See Civ. Code,  § 1670.5(a) ["If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."].)

Finally, Sunstock contends the court erred "in not recognizing the predatory commission rate was unconscionable."  However, on appeal, Sunstock does not present record citations suggesting that this contention was made below.  (See *Woodward Park Homeowners Assn., Inc. v. City of Fresno* (2007) 150 Cal.App.4th 683, 712 ["As a general rule, an appellate court will not review an issue that was not raised by some proper method by a party in the trial court."].)  Moreover, although Sunstock cites an Investopedia article stating that the "general rate is typically 2 to 2.5%," Sunstock does not explain why that rate should apply in this case.  We thus decline to review the argument.  (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].)

## III

### DISPOSITION

The judgment is affirmed.  Respondent BSL is entitled to its costs on appeal.


DELANEY, J.


WE CONCUR:


O'LEARY, P.J.


MOORE, J.

14